**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DARRELL KEMP, and BRADLEY
COOPER, on behalf of themselves and all
others similarly situated,

                *Plaintiffs*,

    v.

BONOBOS, INC.,

              *Defendant.*

Case No. 1:21-cv-854-JMF

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT</u>

**TABLE OF CONTENTS**

BACKGROUND ....................................................................................................................2

ARGUMENT .......................................................................................................................3

I.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(1) Because Named Plaintiffs Lack Article III Standing ............................................................3

    A.    The Alleged Personal Information Taken in the Security Incident Is Not Sufficient to Show a Concrete or Imminent Injury .............................4

        i.    Named Plaintiffs Fail to Allege that They Have Suffered Any Actual Injury ..................................................................4

        ii.    Named Plaintiffs Fail to Sufficiently Allege that There is a Risk of Imminent Injury......................................................7

    B.    Named Plaintiffs' Conclusory Allegations of Diminution of Value Do Not Constitute Injury ........................................................................10

    C.    Named Plaintiffs Cannot Manufacture Standing By Taking Steps To Prevent A Wholly Speculative Risk of Injury ..........................................11

II.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a Claim Upon Which Relief May Be Granted ...............................13

    A.    Named Plaintiffs Fail to State a Claim for Negligence Because They Cannot Show Any Breach of Duty or Proximately Caused Harm.............13

    B.    Named Plaintiffs Fail to State a Claim for Negligence Per Se Because the FTC Act Does Not Support a Negligence Per Se Claim in New York........................................................................................16

    C.    Named Plaintiffs Fail to State a Claim for Violation of GBL Section 349 Because They Fail to Sufficiently Allege a Materially Misleading Act or Omission and Resulting Damages ...............................17

    D.    Named Plaintiffs Fail to State a Claim for Unjust Enrichment Because They Fail to Sufficiently Allege that Any Enrichment Would Warrant Restitution and the Claim Is Duplicative of Their Negligence and GBL Claims ...................................................................19

CONCLUSION....................................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
   19 N.Y.S.3d 850 (Sup. Ct. 2015) ..............................................................................18

*Alce v. Wise Foods, Inc.*,
   No. 17 Civ. 2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018)..............................21

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
   499 F.2d 232 (2d Cir. 1974) ....................................................................................17

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) ................................................................................6, 11

*Auz v. Century Carpet, Inc.*,
   No. 12 Civ. 417(LGS), 2014 WL 199511 (S.D.N.Y. Jan. 17, 2014).....................................17

*Barreto v. Westbrae Nat., Inc.*,
   No. 19-cv-9677 (PKC), 2021 WL 76331 (S.D.N.Y. Jan. 7, 2021)........................................21

*Bautista v. CytoSport, Inc.*,
   223 F. Supp. 3d 182 (S.D.N.Y. 2016)........................................................................22

*Borenkoff v. Buffalo Wild Wings, Inc.*,
   No. 16-cv-8532 (KBF), 2018 WL 502680 (S.D.N.Y. Jan. 19, 2018)....................................21

*Caronia v. Philip Morris USA, Inc.*,
   715 F.3d 417 (2d Cir. 2013).....................................................................................14

*Carver v. City of New York*,
   621 F.3d 221 (2d Cir. 2010).......................................................................................4

*Chambliss v. Carefirst, Inc.*,
   189 F. Supp. 3d 564 (D. Md. 2016) ..........................................................................11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..........................................................................................7, 10

*Cohen v. Ne. Radiology, P.C.*,
   No. 20 CV 1202 (VB), 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021).....................................16

*Corsello v. Verizon N.Y., Inc.*,
   967 N.E.2d 1177 (N.Y. 2012).....................................................................................21

*Dane v. UnitedHealthcare Ins. Co.*,
   974 F.3d 183 (2d Cir. 2020)........................................................................13, 14

*Edelman v. Starwood Cap. Grp., LLC*,
   892 N.Y.S.2d 37 (App. Div. 1st Dep't 2009) .........................................................20

*Forbes v. Wells Fargo Bank, N.A.*,
   420 F. Supp. 2d 1018 (D. Minn. 2006)..................................................................15

*Henderson v. Sun Pharm. Indus., Ltd.*,
   No. 4:11-CV-0060-HLM, 2011 WL 4024656 (N.D. Ga. June 9, 2011) ..................6

*Jackson v. Loews Hotels, Inc.*,
   No. ED CV 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ...............9

*Johnson v. LVNV Funding*,
   No. 13-C-1191, 2014 WL 4852027 (E.D. Wis. Sept. 29, 2014)..............................6

*Katz v. Donna Karan Co., L.L.C.*,
   872 F.3d 114 (2d Cir. 2017).....................................................................................8

*In re LinkedIn User Priv. Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ..................................................................9

*McFarlane v. Altice USA, Inc.*,
   No. 20-CV-1297 (JMF), 2021 WL 860584 (S.D.N.Y. Mar. 8, 2021) ..........1, 7, 8, 9

*Mount v. Pulsepoint, Inc.*,
   No. 13 Civ. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ..............19

*Nelson v. MillerCoors, LLC*,
   246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................................22

*Pedroza v. Ralph Lauren Corp.*,
   No. 19-cv-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) ....................7

*Pena v. Brit. Airways, PLC (UK)*,
   No. 18-cv-6278 (LDH) (RML), 2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020) .......5, 8, 11, 12

*Phillips-Smith Specialty Retail Grp. II, L.P. v. Parker Chapin Flattau & Klimpl,*
   *LLP*,
   696 N.Y.S.2d 150 (App. Div. 1st Dep't 1999) ......................................................16

*Ross v. AXA Equitable Life Ins. Co.*,
   115 F. Supp. 3d 424 (S.D.N.Y. 2015).....................................................................6

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013).....................................................................................16

iii

*Shafran v. Harley-Davidson, Inc.*,
No. 07 Civ. 01365(GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .............12, 15, 19, 20

*Shetiwy v. Midland Credit Mgmt.*,
15 F. Supp. 3d 437 (S.D.N.Y. 2014).......................................................................................6

*In re Sling Media Slingbox Advert. Litig.*,
202 F. Supp. 3d 352 (S.D.N.Y. 2016)...................................................................................18

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ...............................................................................17

*Small v. Lorillard Tobacco Co.*,
720 N.E.2d 892 (N.Y. 1999)..................................................................................................19

*Smith v. Chase Manhattan Bank, USA, N.A.*,
741 N.Y.S.2d 100 (App. Div. 2d Dep't 2002).......................................................................19

*Steven v. Carlos Lopez and Assocs. LLC*,
422 F. Supp. 3d 801 (S.D.N.Y. 2019).....................................................................5, 7, 10, 12

*Stutman v. Chem. Bank*,
731 N.E.2d 608 (N.Y. 2000)..................................................................................................17

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) .............................................................................................12

*Twohig v. Shop-Rite Supermarkets, Inc.*,
No. 20-CV-763 (CS), 2021 WL 518021 (S.D.N.Y. Feb. 11, 2021) ......................................21

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
No. CV 18-2970 PSG, 2019 WL 6522843 (C.D. Cal. Aug. 19, 2019)................................7, 9

*Valeriano v. Rome Sentinel Co.*,
842 N.Y.S.2d 805 (App. Div. 4th Dep't 2007).......................................................................15

*Whalen v. Michaels Stores, Inc.*,
689 F. App'x 89 (2d Cir. 2017) ................................................................................... *passim*

*Willey v. J.P. Morgan Chase, N.A.*,
No. 09 Civ. 1397(CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009)..............................14, 17

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
No. 3:12-cv-00325-RCJ-VPC, 2013 WL 4830497 (D. Nev. Sept. 9, 2013) ..........................21

**Statutes**

Federal Trade Commission Act ........................................................................................2, 13 , 17

iv

New York General Business Law .......................................................................... *passim*

**Other Authorities**

16 C.F.R. § 603.2 .....................................................................................................4

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) .................................1, 3, 13, 22

In response to a recent data security incident suffered by Bonobos, Inc. ("Bonobos"), plaintiffs bring numerous claims based on a speculative risk of identity theft, time and costs expended to mitigate that speculative risk, and a vague assertion of unquantified loss of value to their personal information.  Plaintiffs do not allege that they have suffered any injury that has resulted in actual loss, nor that any alleged loss is imminent.  The law does not permit such actions. The Class Action Complaint (the "Complaint"), ECF No. 1, should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because (1) neither named plaintiff alleges an actual injury, let alone one plausibly connected to this security incident, thus depriving this Court of subject-matter jurisdiction, and (2) neither plaintiff pleads the facts necessary to state their claims.

A data security incident does not automatically result in cognizable injury for those whose information may be affected.  Although plaintiffs devote several pages of their Complaint to generalized articles about identity theft, they include no factual allegations suggesting that they have been or will be the victims of identity theft as a result of the security incident.  Nor could they.  The data elements involved here are not "immutable" and cannot be "wielded to identify [the victims] and target [them] in fraudulent schemes and identify theft attacks."  *McFarlane v. Altice USA, Inc.*, No. 20-CV-1297 (JMF), 2021 WL 860584, at *4 (S.D.N.Y. Mar. 8, 2021) (Furman, J.) (citation omitted).  Moreover, a generalized fear of speculative future injury, and time and costs spent monitoring accounts, cannot save plaintiffs' Complaint.  Numerous courts, including the Second Circuit, have rejected time and again allegations of manufactured injury as insufficient to confer standing.  Without factual allegations supporting an injury-in-fact that is fairly traceable to the actions of Bonobos, plaintiffs' claims should be dismissed.

Plaintiffs also fail to allege plausible causes of action for largely the same reason.  Each claim alleged requires that plaintiffs suffered some kind of *actual* harm.  Plaintiffs have not met

1

this bar.  Plaintiffs' negligence claim fails for the additional reason that plaintiffs have failed to allege a breach of any duty.  Nor can plaintiffs salvage their negligence per se claim by pointing to the Federal Trade Commission Act ("FTC Act"), because New York does not recognize negligence per se actions under the FTC Act.  Plaintiffs' failure to plead any actual harm or materially misleading conduct by Bonobos likewise dooms their claim under New York General Business Law ("GBL") Section 349.  And plaintiffs' unjust enrichment claim fairs no better, since plaintiffs have not pled any enrichment by Bonobos at plaintiffs' expense, any actual loss, or any unjust retention of enrichment that would warrant restitution; and, at any rate, the unjust enrichment claim is improperly duplicative of plaintiffs' negligence and GBL claims, which independently warrants dismissal of the unjust enrichment claim.

At bottom, plaintiffs seek to maintain a suit based on alleged injuries from the disclosure of information for which there is *no* actual identifiable injury, either now or in the future.  This is impermissible under controlling law.  Plaintiffs' Complaint should be dismissed.

## **BACKGROUND**

Bonobos owns and operates a men's clothing store chain both as a digital storefront and through over 60 physical locations.  Compl. ¶ 24.  To make a purchase on Bonobos's website, customers create an account, providing basic contact information and their credit card information. *Id*. ¶ 3; *see also* https://bonobos.com/sign-in.

In January 2021, a threat actor, ShinyHunters, posted on a hacker forum some Bonobos backup files (the "Security Incident").  Compl. ¶ 4.  On January 24, 2021, Bonobos informed customers via email that an unauthorized third party may have been able to view certain customers' "contact information and encrypted passwords."  *Id*. ¶ 6.  Plaintiffs Darrell Kemp and Bradley Cooper (collectively, "Named Plaintiffs") each allege that they received Bonobos's email.  *Id*. ¶ 17.  Named Plaintiffs do not maintain that notice was required under any state data breach law.

Fortunately, encryption protected customers' account passwords; Bonobos also took the additional precautionary step of disabling the then-current passwords for the potentially affected customers and required them to create new passwords. *Id.* ¶ 6.

Five days later, on January 29, 2021, Named Plaintiffs filed this putative class action against Bonobos. Although not consistent, Named Plaintiffs allege at different places throughout the Complaint that email addresses, phone numbers, the last four digits of credit card account numbers, account order information, encrypted passwords, and password histories were impacted in the Security Incident. *Id.* ¶ 1, 26. The Complaint does not allege that Social Security numbers ("SSNs"), dates of birth, drivers' license numbers, or other government issued numbers were impacted in the Security Incident, nor does it allege that Bonobos collects this type of data. The Complaint also does not allege that full credit card numbers or passwords in plain text were impacted in the Security Incident.

As to the impact of the Security Incident, Named Plaintiffs allege that they have suffered "one or more" of a host of unspecified injuries, such as (1) a speculative risk from future identity theft and "potential fraud"; (2) the diminishment in value of their personal information; and (3) time and money spent to monitor and prevent against a risk of future identity theft. *Id.* ¶ 58. Named Plaintiffs do not identify which injuries, out of their laundry list of injuries, they themselves have suffered. *Id.* Nor do Named Plaintiffs allege that they personally have suffered any actual or attempted identity theft or other fraudulent activity.

## **ARGUMENT**

### I.   **The Complaint Should Be Dismissed Pursuant to Rule 12(b)(1) Because Named Plaintiffs Lack Article III Standing**

Named Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. Named Plaintiffs cannot show: "(1) that [they]

suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there was a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (internal quotations and modifications omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Here, Named Plaintiffs cannot get past the first element of standing because they have not alleged that they have suffered or will imminently suffer any injury-in-fact.  The mere exposure of the data elements at issue does not create a concrete *or* imminent injury as a matter of law.  Moreover, Plaintiffs do not allege sufficient facts explaining how their personal information has lost any value.  And they cannot otherwise manufacture standing by spending time and money on credit monitoring and detection services to prevent a speculative, implausible risk of identity theft or fraud.

> **A.      The Alleged Personal Information Taken in the Security Incident Is Not Sufficient to Show a Concrete or Imminent Injury**

> **i.      Named Plaintiffs Fail to Allege that They Have Suffered Any Actual Injury**

Named Plaintiffs have failed to plead *any* actual injury as a result of the theft or alleged "unauthorized use" of their data.  Compl. ¶ 58(a), (b) and (c).  The Complaint contains no allegations frequently found in security incident cases to constitute injury-in-fact.  Specifically, Named Plaintiffs do not allege that: (1) they have suffered from any kind of identity theft[1]; (2)

---

[1] Notably, Plaintiffs cite, at footnote 17 of the Complaint, the FTC's definitions of "identity theft" and "identifying information" that is used for identity theft.  By Named Plaintiffs' own allegations, *none* of the data elements involved here are elements that the FTC itself defines as "identifying information" used in "identity theft."  Compl. ¶ 40, n.17; 16 C.F.R. § 603.2 (defining "identity theft" as "'fraud committed or attempted using the identifying information of another person without authority'" and then defining "identifying information" as "'any name or number that may be used, alone or in conjunction with any other information, to identify a specific person,'

fraudulent charges have been made on either of their credit cards, bank accounts, or other financial accounts; (3) fraudulent tax returns were filed in their names; (4) their iCloud accounts were hacked (or that they even own iCloud accounts); or (5) they purchased any credit monitoring or identity theft protection services.  In *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017), and *Pena v. Brit. Airways, PLC (UK)*, No. 18-cv-6278 (LDH) (RML), 2020 WL 3989055, at *2 (E.D.N.Y. Mar. 30, 2020)—two data security incident cases in this Circuit that were dismissed for lack of standing—plaintiffs at least alleged that their credit card numbers had been *used*, although unsuccessfully, to make fraudulent purchases.  *See also Steven v. Carlos Lopez and Assocs. LLC*, 422 F. Supp. 3d 801, 804 (S.D.N.Y. 2019) (Furman, J.) (contrasting cases involving actual use of credit cards in fraudulent transactions with mere exposure of the data).  Here, Named Plaintiffs do not even allege *any* fraudulent charges have been made (or have been attempted) on their credit cards.

At most, Named Plaintiffs allege "on information and belief," that the threat actor has engaged in "credential stuffing" with encrypted passwords that it allegedly "cracked."  Compl. ¶ 5.  As an initial matter, Bonobos has located no case holding that credential stuffing, even if plausible despite encryption, creates an "actual" injury-in-fact sufficient to confer standing. Setting this aside, Named Plaintiffs allege no facts to support an allegation that they *themselves* have suffered from credential stuffing—facts that Named Plaintiffs should have at their disposal. Namely, Named Plaintiffs do not allege that they used their "cracked" stolen passwords as passwords for any account outside of their Bonobos account, thereby making those accounts susceptible to "credential stuffing."  Nor do they make allegations that any other accounts have

---

including, among other things, '[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number.'").

been compromised, much less that those accounts used the same password as their Bonobos accounts.  Named Plaintiffs' vague allegations of "credential stuffing," without more facts specifically related to Named Plaintiffs, are therefore insufficient for standing.  *See, e.g., Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 447 (S.D.N.Y. 2014) (holding articles pasted in complaint which described "debt collection practices that could constitute violations of the FDCPA" were insufficient to show standing because plaintiffs "failed to plead that such tactics were used *against them*" (emphasis original)).

Likewise, Named Plaintiffs' statement that they have suffered "one or more of the following" injuries is a textbook example of allegations that lack specificity and any indication of actual, concrete injury.  Compl. ¶ 58.  "It is well established that [a court] need not credit a complaint's conclusory statements without reference to its factual context." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011) (internal quotation and citation omitted).  Courts have routinely found that resort to such "including, but not limited to" language is evidence of the insufficiency of injuries.  *See Johnson v. LVNV Funding*, No. 13-C-1191, 2014 WL 4852027, at *8 (E.D. Wis. Sept. 29, 2014) (finding plaintiff's allegation that he had suffered injuries "including, but not limited to" a laundry list of bullet point harms was conclusory); *Henderson v. Sun Pharm. Indus., Ltd.*, No. 4:11-CV-0060-HLM, 2011 WL 4024656, at *8 (N.D. Ga. June 9, 2011) (dismissing claims for failure to plead injury where plaintiff listed all injuries as "including, but not limited to").  Named Plaintiffs fail to allege which, if any, of the laundry list of injuries they include that they *themselves* (as opposed to absent class members) have actually suffered, and they may not rely on injuries to absent class members to support their own standing. *See Ross v. AXA Equitable Life Ins. Co*., 115 F. Supp. 3d 424, 432 (S.D.N.Y. 2015) (Furman, J.) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  This Court should not look to such conclusory

6

allegations to support the constitutional standing requirement. *Pedroza v. Ralph Lauren Corp.*, No. 19-cv-08639 (ER), 2020 WL 4273988, at *2 (S.D.N.Y. July 24, 2020) (holding a court need not draw inferences in plaintiff's favor from conclusory allegations).

ii.   **Named Plaintiffs Fail to Sufficiently Allege that There is a Risk of Imminent Injury**

Faced with no actual injury, Named Plaintiffs suggest that they face an imminent risk of harm of identity theft or fraud from the Security Incident. This too fails. When relying on a theory of imminent injury, "allegations of possible future injury are not sufficient" and a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013); *see also Steven*, 422 F. Supp. 3d at 804 ("Accordingly, an allegation of threatened injury in the future is sufficient to establish standing only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." (internal quotations and citation omitted)). Such is the case here given the non-sensitive data elements allegedly exposed in the Security Incident.

In evaluating whether the risk of injury is imminent or impending under Article III, courts in data security matters frequently consider the *type* of data impacted in the incident. *See, e.g.*, *Whalen*, 689 F. App'x at 96-97 (contrasting plaintiff's stolen full credit card account number with cases involving the theft of SSNs); *McFarlane*, 2021 WL 860584, at *4 (same); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, No. CV 18-2970 PSG (GJSx), 2019 WL 6522843, at *4-5 (C.D. Cal. Aug. 19, 2019). Based on the data elements allegedly impacted here (basic contact information, last four digits of a credit card number, and encrypted passwords or password histories), Named Plaintiffs cannot plead imminent injury sufficient to meet constitutional standing requirements.

*First*, Courts in this Circuit have routinely held that the alleged harm from the disclosure of *full* credit card numbers (much less the last four digits) is not enough for a plaintiff to state a cognizable Article III injury.  For example, in *Whalen*, the Second Circuit held that the theft of plaintiff's full credit card number was insufficient to confer standing because, among other reasons, the plaintiff "d[id] not allege *how* she can plausibly face a threat of future fraud" from that theft.  689 F. App'x at 90 (emphasis added).  Likewise, the Eastern District of New York recently dismissed a complaint for lack of standing, where the plaintiff alleged the exposure of his full credit card number because "the threat of future identity theft [was] neither imminent nor plausible . . . no personal information apart from Plaintiff's billing address, such as his date of birth or SSN, was compromised in the breach, which might have allowed for the inference of a likelihood of future identity theft."  *Pena*, 2020 WL 3989055, at \*2; *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 118-21 (2d Cir. 2017) (dismissing a complaint for FACTA violations for lack of standing based on a store printing ten out of the twelve digits of the plaintiff's credit card number on the plaintiff's receipt—the first six digits and last four digits).  Here, the Security Incident did not impact full credit card numbers, and Named Plaintiffs fail to explain how the last four digits might plausibly create imminent harm when controlling precedent has held that the full numbers do not.

Indeed, the impermanence of credit card numbers, particularly the last four digits, fatally undercuts Named Plaintiffs' reliance on that data element for standing purposes.  In *McFarlane*, for example, this Court distinguished the theft of SSNs from the theft of full credit card account numbers because of the immutable quality of SSNs: "Unlike a credit card number, which can be changed to *eliminate the risk of harm following a data breach*, '[a SSN] derives its value in that it is immutable,' and when it is stolen it can 'forever be wielded to identify [the victim] and target

him in fraudulent schemes and identity theft attacks.'"  2021 WL 860584, at *4 (emphasis added).

Named Plaintiffs do not allege that their SSNs were stolen (nor could they plausibly, because

Bonobos does not collect SSNs).  Named Plaintiffs' allegations regarding the last four digits of

their credit card numbers—the same information contained on any printed receipt—are insufficient

to establish an injury-in-fact for purposes of Article III standing.

> *Second*, exposure of basic contact information is insufficient to create Article III standing,

too.  After all, basic contact information, such as name, address, and email address, are not the

kinds of information that would create a serious risk of harm.  *See In re Uber Techs.*, 2019 WL

6522843, at *4 ("Plaintiff fails to explain *how* gaining access to one's basic contact information

and driver's license number creates a credible threat of fraud or identity theft." (emphasis added));

*Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JCx), 2019 WL 6721637, * 3 (C.D. Cal.

July 24, 2019) (holding that exposure of plaintiff's "name, email address, phone number, and

mailing address" did not state a cognizable injury because those are not the "certain types of

sensitive information" which had led courts to find an imminent risk of harm).  The only contact

information Named Plaintiffs allege has been exposed here is name, address, and phone number.

*See* Compl. ¶¶ 1, 26.  Bonobos is aware of no case which has found standing based on the exposure

of such limited contact information, and this Court should decline the invitation to be the first.

> *Third*, the exposure of encrypted passwords or password histories is insufficient to confer

standing.  While it is unclear what exactly Named Plaintiffs allege was compromised here, neither

can plausibly cause injury-in-fact.  Critically, Named Plaintiffs do not allege that their plain text

passwords, whether current or historical, were exposed.   At least one court considering the

exposure of encrypted passwords found that even publicly listed, encrypted passwords do not

amount to actual harm.  *See In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1094-95 (N.D.

Cal. 2013) (holding plaintiff failed to allege sufficient injury from threat actors putting her encrypted password on a public website because she failed to allege how exposure of an encrypted password was tantamount to identity theft).  And Named Plaintiffs' allegations of "credential stuffing" as the basis for some future harm requires "the same attenuated chain of possibilities rejected by the [Supreme] Court in *Clapper*."  *Steven*, 422 F. Supp. 3d at 806 (internal quotations and modifications omitted).  First, the Court must assume that the thief here *cracked* the encrypted passwords, then "targeted" Named Plaintiffs based on those cracked passwords.  *Id.*  In other words, the thieves must "select, from thousands of others, the personal information of named plaintiffs and attempt successfully" to credential stuff, obtain information that can be used to steal their identities, and then "steal their identities."  *Id.*  Such theorizing—especially when Named Plaintiffs have not alleged that they used their Bonobos password for any other accounts—and the multiple intervening steps required, is too speculative and attenuated to pass Article III muster.

None of the data elements involved here are enough to show an imminent threat of identity theft sufficient to confer Article III standing.

### B.   Named Plaintiffs' Conclusory Allegations of Diminution of Value Do Not Constitute Injury

Similarly, Named Plaintiffs fail to allege any actual diminution in value or inability to use their alleged personal information.  It is not sufficient to make conclusory allegations that a security incident has caused a plaintiff's personal information to lose value or be unusable—a plaintiff must plead how it has been diminished to constitute injury-in-fact.  In the District Court's decision in *Whalen*, for example (which the Second Circuit affirmed), the court made clear that merely alleging consumers place value on keeping their credit card information secure is insufficient for standing purposes because such allegations do not demonstrate "how [plaintiff's] cancelled credit card information lost value."  153 F. Supp. 3d 577, 580-81 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x

10

89; *see also Pena*, 2020 WL 3989055, at *3 (even assuming plaintiff's credit card information had value, mere allegation that its value had been impaired was insufficient because "Plaintiff has not alleged that he was offered or forewent any opportunity to profit from the sale of his personal information"); *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) (no injury-in-fact where plaintiffs had "not alleged that they have attempted to sell their personal information or that, if they have, the [security incident] forced them to accept a decreased price for that information").

Named Plaintiffs' allegations here fall short of even those found insufficient in *Pena* and *Whalen*, both of which involved *full* credit card account numbers and where the court still found no standing. Named Plaintiffs include no allegations in their Complaint explaining how their information specifically (*i.e*., contact information, last four digits of credit card, and encrypted passwords or password history) has lost value. Instead, Named Plaintiffs generally conclude that they have been harmed by: (1) "the inability to use their Private Information" and (2) the "diminution in value of their Private Information," Compl. ¶ 58(d) and (g), and reference generic online articles regarding the loss of value of other types of data, like full credit card numbers. *Id* at ¶ 52. But Named Plaintiffs' vague, unspecific allegations fail as a matter of law to state a cognizable Article III injury because Named Plaintiffs have not pled any specific facts supporting how the Security Incident has caused any loss of use or "diminution of value" of *their* personal information. *See Amidax Trading Grp.*, 671 F.3d at 146-47 (noting conclusory allegations are insufficient to support standing).

### C.   Named Plaintiffs Cannot Manufacture Standing By Taking Steps To Prevent A Wholly Speculative Risk of Injury

Named Plaintiffs' conclusory allegations that they are harmed by taking steps to ameliorate the Security Incident likewise fail to state a cognizable injury. *See* Compl. ¶ 58(c) and (e). Courts

routinely hold that allegations of ameliorative steps taken and corresponding "lost time" do not create the kind of injury required for Article III standing.  In *Pena*, for example, the Eastern District of New York found that "the time and expense Plaintiff allegedly devoted to credit monitoring and the mitigation of the identity theft, are not redressable injuries."   2020 WL 3989055, at *3.  Similarly, in *Whalen*, the District Court noted that "the Supreme Court has dismissed this type of argument" about lost time and money associated with credit monitoring and other mitigation expenses, because plaintiffs "cannot manufacture standing through credit monitoring." 153 F. Supp. 3d at 581 (internal quotations omitted); *see also Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365(GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) (costs of monitoring for identity theft and credit card fraud were insufficient to confer standing); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344-45 (11th Cir. 2021) (plaintiff could not manufacture standing by inflicting injuries on himself based on "insubstantial, non-imminent risk of identity theft").

Named Plaintiffs do not allege that they actually purchased credit monitoring services or paid any amount of money for identity theft protection.  Instead, Named Plaintiffs only allege unspecified amounts of lost "time" and "costs" spent monitoring their accounts.  Compl. ¶¶ 18, 23.  But as this Court has held, allegations of harm from time and even money spent "monitoring or changing . . . financial information and accounts" following a data security incident do not confer standing because plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Steven*, 422 F. Supp. 3d at 807.

Named Plaintiffs cannot demonstrate actual injury or an imminent threat of injury related to the alleged theft or "unauthorized use" of their personal information, much less one related to

the Security Incident, and therefore lack standing to bring the present action.  Because Plaintiffs

have pled no injury-in-fact, there can be no causal connection between any non-existent injury and

the Security Incident.  The Complaint should therefore be dismissed for lack of subject-matter

jurisdiction.

**II.**      **The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because It
         Fails to State a Claim Upon Which Relief May Be Granted**

Separately and independently, the Complaint should be dismissed because it fails to state

a cause of action under Federal Rule of Civil Procedure 12(b)(6).  While considering a motion to

dismiss, a court must "accept as true all factual allegations and draw from them all reasonable

inferences," but a court is "not required to credit conclusory allegations or legal conclusions

couched as factual allegations."  *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir.

2020) (internal modifications omitted).  Named Plaintiffs' Complaint fails to state any viable

claims: (1) Named Plaintiffs' negligence claim fails because Named Plaintiffs cannot show a

breach of any duty by Bonobos or any proximately caused, actual damages suffered; (2) their

negligence per se claim is based on a statute, the FTC Act, which does not support a negligence

per se claim in New York; (3) their GBL claim lacks merit because Named Plaintiffs do not allege

a materially misleading act or omission or any harm from any such act or omission; and (4)

restitution under an unjust enrichment claim is improper because Named Plaintiffs cannot show

that Bonobos was enriched at their expense, that they suffered any actual loss, or that any alleged

loss would justify restitution, and, at any rate, their unjust enrichment claim is improperly

duplicative of Named Plaintiffs' negligence and GBL claims.

**A.**      **Named Plaintiffs Fail to State a Claim for Negligence Because They
         Cannot Show Any Breach of Duty or Proximately Caused Harm**

For the same reason Named Plaintiffs cannot meet Article III's standing requirement,

Named Plaintiffs' negligence claim fails because Named Plaintiffs do not plead any actual or future

harm, a required element under New York law. *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (citing *Akins v. Glens Falls City School Dist.*, 424 N.E.2d 531, 535 (NY 1981)). Moreover, Named Plaintiffs have failed to plead: (1) a breach of any duty and (2) proximate causation of any harm—both required elements of their negligence claim—with anything more than conclusory assertions. *Id.*

First, even assuming Bonobos has a common law duty to safeguard its customers' data, Named Plaintiffs have failed to adequately plead that Bonobos breached that duty. Named Plaintiffs allege in a conclusory fashion that "Defendant failed to comply with [its data security] duty." *See* Compl. ¶¶ 30, 35, 38. But that is not enough. As courts in this District have held, "formulaic recitation[s]" of a breach of duty, such as "Defendant deliberately and/or recklessly did not maintain reasonable procedures designed to protect against unauthorized access [to credit card numbers]," are insufficient to survive a motion to dismiss. *Willey v. J.P. Morgan Chase, N.A.*, No. 09 Civ. 1397(CM), 2009 WL 1938987, at *4 (S.D.N.Y. July 7, 2009). Indeed, a complaint is deficient if it lacks factual allegations "that describe any insufficiency in [defendant's] security procedures, or . . . allegations that [defendant] lacked such procedures" or an explanation of "how the procedures [defendant] adopted failed to comply with [an industry group's] Guidelines." *Id.*; *see also Dane*, 974 F.3d at 188 (on a motion to dismiss, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Just as in *Willey*, Named Plaintiffs have pled nothing more than a threadbare recitation of the elements of their negligence claim supported by conclusory assertions that Bonobos has not followed industry guidelines and/or breached its duty to Named Plaintiffs. Named Plaintiffs have failed to plead *how* Bonobos's policies and procedures were insufficient or whether Bonobos lacked such procedures, or *how* Bonobos failed to comply with industry standards. Instead, the Complaint contains several

14

paragraphs of references to articles related to industry standards, but makes no connection between those standards and the Security Incident or Bonobos's practices.  Compl. ¶ 31-38.  Named Plaintiffs appear to admit that Bonobos stored Named Plaintiffs' account passwords in an encrypted form, Compl. ¶¶ 6, 26, 27, a security control they suggest is industry standard.  Compl. ¶ 32 ("encrypt information stored on computer networks").  Named Plaintiffs' negligence claim should therefore be dismissed for failing to adequately plead breach of any applicable duty.

*Second*, Named Plaintiffs have failed to plead any actual harm stemming from such a breach.  As discussed *supra* at 4-7, Named Plaintiffs' alleged injuries are all purely speculative and conclusory: Named Plaintiffs do not allege that they have suffered identify theft or any fraudulent charges or that they have personally suffered any losses other than manufactured losses related to the time spent monitoring their accounts.  This is legally insufficient to maintain a claim.  *Shafran*, 2008 WL 763177, at *3 (predicting New York courts will hold that "the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy" for several types of claims, including negligence claims); *see also Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020-21 (D. Minn. 2006) (holding credit monitoring costs are insufficient to show actual damages that would support a negligence action).  Nor is Named Plaintiffs' claim that they have been injured by the loss of their privacy, Compl. ¶ 58(h), legally cognizable in New York, because New York does not recognize a common-law privacy tort.  *Valeriano v. Rome Sentinel Co.*, 842 N.Y.S.2d 805 (App. Div. 4th Dep't 2007) (holding negligence claim for loss of privacy must fail because allowing such a claim would circumvent New York's refusal to recognize a common law privacy tort).

*Third*, Named Plaintiffs' alleged future injuries are insufficient to show harm to support a negligence claim.  Under New York law, a plaintiff's alleged harm in a negligence action may not

be premised on "a chain of gross speculations on future events." *Phillips-Smith Specialty Retail Grp. II, L.P. v. Parker Chapin Flattau & Klimpl, LLP*, 696 N.Y.S.2d 150, 152  (App. Div. 1st Dep't 1999).  That is all that Named Plaintiffs allege here.  As discussed *supra* at 5-7, all of Named Plaintiffs' future injuries rely on a purely speculative and attenuated chain of events, namely their encrypted passwords getting cracked, use of those passwords for multiple accounts, credential stuffing attacks succeeding on those other accounts, and further data being gained through credential stuffing.  *Id.*  This is not enough.

*Fourth*, even if Named Plaintiffs had alleged a cognizable harm, they have failed to prove that any such harm was proximately caused by the Security Incident.  Because Named Plaintiffs have failed to plead any injury that is "fairly traceable" to Bonobos's conduct for Article III's purpose, *supra* at 12-13, they necessarily fail to plead proximate causation because the "fairly traceable standard is lower than that of proximate cause." *Rothstein v. UBS AG*, 708 F.3d 82, 91-92 (2d Cir. 2013) (internal quotations and citation omitted).

Since Named Plaintiffs fail to plead a breach of any duty in more than conclusory terms and any proximately-caused, cognizable harm, their negligence claim should be dismissed.

### B. Named Plaintiffs Fail to State a Claim for Negligence Per Se Because the FTC Act Does Not Support a Negligence Per Se Claim in New York

Named Plaintiffs' negligence per se claim fails for the simple reason that the law upon which they base their claim does not support negligence per se as a matter of New York law.  Under New York law, the doctrine of negligence per se holds that "if (1) a statute is designed to protect a class of persons, (2) in which the plaintiff is included, (3) from the type of harm which in fact occurred as a result of its violation, the issues of the defendant's duty of care to the plaintiff and the defendant's breach of that duty are conclusively established upon proof that the statute was violated." *Cohen v. Ne. Radiology, P.C.*, No. 20 CV 1202 (VB), 2021 WL 293123, at *7 (S.D.N.Y.

Jan. 28, 2021).   However, the FTC Act, the statute upon which Named Plaintiffs base their negligence per se claim, does not support a private right of action (and thus a negligence per se claim) under New York law.   *Id.*; *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020) ("Plaintiff's negligence per se claim based on an alleged violation of the FTC Act must also be dismissed because if mere proof of a violation of [the FTC Act] were to establish negligence per se, plaintiff would effectively be afforded a private right of action that the statute does not recognize." (internal quotations and modifications omitted)); *see also Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) (holding Section 5 of the FTC Act may only be enforced by the Federal Trade Commission).

Even if Named Plaintiffs had relied on a statute that did support a negligence per se action, their claim would still fail because a negligence per se claim still requires a plaintiff to show proximate causation and actual harm.   *See Auz v. Century Carpet, Inc.*, No. 12 Civ. 417(LGS), 2014 WL 199511, at *3 (S.D.N.Y. Jan. 17, 2014) (holding plaintiffs must still plead violation of statute is the proximate cause of their injuries under New York law); *Willey*, 2009 WL 1938987, at *9 (noting actual damages is a requirement of a negligence per se claim under New York law). As described *supra* at 4-13, Named Plaintiffs have failed to allege any proximately caused harm which would support a negligence cause of action.   The negligence per se claim should be dismissed as well.

### C.   Named Plaintiffs Fail to State a Claim for Violation of GBL Section 349 Because They Fail to Sufficiently Allege a Materially Misleading Act or Omission and Resulting Damages

Named Plaintiffs' claims under GBL Section 349 fail because Named Plaintiffs do not allege a materially misleading statement or omission by Bonobos or any resulting damages. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000).   State courts have held that, in the data security context, a promise to protect a plaintiff's privacy does not become materially misleading

simply because a data security incident occurs; such promises "do not constitute an unlimited guarantee that [personal] information c[annot] be stolen or that computerized data c[annot] be hacked." *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 859-60 (Sup. Ct. 2015) ("Defendants' alleged failure to safeguard plaintiffs' protected [personal] information and identifying information from theft did not mislead the plaintiffs in any material way and does not constitute a deceptive practice within the meaning of [GBL § 349]."). Named Plaintiffs do not even allege a single material misstatement by Bonobos that could be considered misleading, unlike the plaintiffs in *Abdale* who pointed to a privacy policy.

Moreover, there was no material omission either. Misleading omissions are actionable under the GBL "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995)). The word "possesses" is crucial, because to plead a viable omission claim under the GBL, plaintiffs must "plausibly allege that the defendants *had knowledge* of the material information and failed to disclose or actively concealed such information." *Id.* (internal quotations and modifications omitted) (emphasis original). In other words, "a defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability under § 349." *Id.* As in *Sling* and *Abdale*, Named Plaintiffs fail to allege that the defendant was aware of security vulnerabilities that it failed to disclose. *Id.*; *Abdale*, 19 N.Y.S.3d at 859-60. As such, Named Plaintiffs have failed to plead a viable GBL claim based on omissions.

Named Plaintiffs' GBL claim is also deficient because Named Plaintiffs fail to plead any actual damages they have suffered from any deceptive practice, as discussed *supra* at 4-7. *See*

*Mount v. Pulsepoint, Inc.*, No. 13 Civ. 6592 (NRB), 2016 WL 5080131, at *4 (S.D.N.Y. Aug. 17, 2016) (refusing to find harm under GBL where company allegedly took consumer's browser data surreptitiously through tracking cookies); *see also Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (App. Div. 2d Dep't 2002) (holding sale of customers' names, addresses, and financial information to third-parties in violation of customer privacy policy failed to state any damages since plaintiff failed to state any actual loss from sale of names).  Named Plaintiffs cannot show otherwise by alleging they would not have bought products from Bonobos if they knew about Bonobos's security practices.  *See Small v. Lorillard Tobacco Co*., 720 N.E.2d 892, 898 (N.Y. 1999).  Nor may they save their claim by manufacturing a harm via credit monitoring services over unjustified and speculative fears of identity theft.  *Shafran*, 2008 WL 763177, at *3 (holding that "the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy" for, among other claims, GBL claims).  Since Named Plaintiffs cannot plead an objectively and materially misleading act or omission, or any subsequent harm, their GBL claim should be dismissed with prejudice.

> **D.      Named Plaintiffs Fail to State a Claim for Unjust Enrichment Because They Fail to Sufficiently Allege that Any Enrichment Would Warrant Restitution and the Claim Is Duplicative of Their Negligence and GBL Claims**

Named Plaintiffs' unjust enrichment claim is also unavailing.  Under New York law, "[a]n unjust enrichment claim has three elements: first, the defendant was enriched; second, the enrichment was at the plaintiff's expense; and third, the defendant's retention of the benefit would be unjust."  *Mount*, 2016 WL 5080131, at *13.  Here, Named Plaintiffs have failed to plead any of the three elements.  And the claim should be dismissed for the additional reason that it improperly duplicates Named Plaintiffs' negligence and GBL claims, relying on the same factual allegations to support the unjust enrichment claim.

Named Plaintiffs have not sufficiently alleged that Bonobos was enriched at their expense. Named Plaintiffs do not allege they failed to receive the value of what they paid for (namely, a Bonobos good).   Instead, Plaintiffs appear to suggest Bonobos profited from the transfer of Plaintiffs' information.  Compl. ¶ 117-18.  But claims that a defendant was enriched at a plaintiff's expense due to collection of personal information have not fared well in New York courts.  It is not enough to simply claim that a plaintiff would not have entrusted their information to a defendant retailer absent an obligation to protect a customer's data.  *See Whalen*, 152 F. Supp. 3d at 581.  Such allegations are insufficient because they do not indicate whether the plaintiff is paying extra for the security protections beyond the price of the goods or that any proceeds from the purchase of the goods went towards a company's security services.  *Id.*  An allegation that Bonobos was enriched because Named Plaintiffs somehow lost value in their personal information is likewise deficient unless Named Plaintiffs can allege that they were unable to continue using the information that was supposedly wrongly retained.  *See Edelman v. Starwood Cap. Grp., LLC*, 892 N.Y.S.2d 37, 40 (App. Div. 1st Dep't 2009).   Named Plaintiffs have made none of these allegations, and their unjust enrichment claim fails.

Additionally, as described *supra* at 4-7, Named Plaintiffs have not alleged that they have suffered any actual loss in conjunction with their purchase, which would be required for restitution to be appropriate.  *See Edelman*, 892 N.Y.S. at 40 ("[T]he general rule is that the plaintiff *must have suffered a loss* and an action not based upon loss is not restitutionary." (internal quotations omitted) (emphasis original)).  Named Plaintiffs' allegations of loss from credit monitoring is manufactured from a speculative fear of identity theft and cannot sustain this element.  *See Shafran*, 2008 WL 763177, at *3 (holding that "the time and expense of credit monitoring to

combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy," for, among other claims, unjust enrichment claims).

Moreover, Named Plaintiffs have also failed to meet the last requirement for an unjust enrichment claim—namely, that any benefit retained by the defendant is unjust—because Named Plaintiffs received what they gave a benefit for in the form of the goods they purchased. *See, e.g., In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*, No. 3:12-cv-00325-RCJ-VPC, 2013 WL 4830497, at *4 (D. Nev. Sept. 9, 2013) (no unjust enrichment where plaintiffs "bestowed the benefit of their purchase . . . [and] [d]efendant provided [p]laintiffs a benefit in return (providing the goods)"). This claim should be dismissed.

Finally, even if Named Plaintiffs had successfully pled all elements of an unjust enrichment claim, their claim would still fail because it is duplicative of their GBL and negligence claims. An unjust enrichment claim is not a "catchall cause of action to be used when others fail": unjust enrichment is not "available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). In the wake of the New York Court of Appeals's decision in *Corsello*, courts in this District have "routinely dismiss[ed]" unjust enrichment claims which rely on the same factual allegations as other claims such as negligence and violations of GBL Section 349. *Twohig v. Shop-Rite Supermarkets, Inc.*, No. 20-CV-763 (CS), 2021 WL 518021, at *9 (S.D.N.Y. Feb. 11, 2021) (dismissing unjust enrichment claim as duplicative of negligence, fraud, and GBL Section 349 claims); *see also Barreto v. Westbrae Nat., Inc.*, No. 19-cv-9677 (PKC), 2021 WL 76331, at *8 (S.D.N.Y. Jan. 7, 2021) (same for negligence, fraud, and GBL Section 349 claim); *Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *11-12 (S.D.N.Y. Mar. 27, 2018) (same for GBL Section 349 claim); *Borenkoff v. Buffalo Wild Wings, Inc.*, No. 16-cv-8532 (KBF), 2018 WL 502680, at

*4-5 (S.D.N.Y. Jan. 19, 2018) (same for GBL Section 349 claim); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016) (same for negligence and GBL Section 349 claims). Dismissal of duplicative unjust enrichment claims is warranted even if the other claims are dismissed because, while unjust enrichment may be pled in the alternative, a plaintiff's claim that unjust enrichment was pled in the alternative will not survive a motion to dismiss "where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (dismissing all claims). Here, Named Plaintiffs' unjust enrichment claim relies on the same factual allegations as their GBL and negligence claims—that Bonobos misrepresented its security policies and therefore Named Plaintiffs overpaid them for goods. *Compare, e.g.,* Compl. ¶ 120 (alleging, in the unjust enrichment count, that Named Plaintiffs would not have provided their information if they had known of Bonobos's purportedly inadequate security) *with* Compl. ¶ 104 (alleging, in the GBL count, that Named Plaintiffs would not have provided their information if they had known of Bonobos's purportedly inadequate security). Since Named Plaintiffs rely on the same factual allegations to support their unjust enrichment claim, their GBL claim, and their negligence claim, the unjust enrichment claim is duplicative and should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Bonobos respectfully requests that the Court grant its motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

[*Signature Page to Follow*]

Dated: New York, New York
March 26, 2021

Respectfully submitted,

**HOGAN LOVELLS US LLP**

By: */s/ Michelle Kisloff*
Michelle Kisloff
Allison Holt Ryan (*pro hac vice* forthcoming)
Andrew Bank (*pro hac vice* forthcoming)
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone:  (202) 637-5600
michelle.kisloff@hoganlovells.com

Lisa Fried
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
lisa.fried@hoganlovells.com

Jasmeet K. Ahuja
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

*Counsel for Bonobos, Inc.*